UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN PAQUIN,<br><br>Plaintiff,<br><br>v.<br><br>ARTHUR FRITCH III & MASSACHUSETTS CONVENTION CENTER AUTHORITY,<br><br>Defendants. | Civil Action No. 3:24-cv-30074-MGM |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS UNDER RULE 12(b)(6) OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT UNDER RULE 56**

This matter arises out of an isolated, non-sexual tap on the Plaintiff's shoulder by a coworker in a public setting. From this incident, the Plaintiff brings claims against his former employer and the alleged perpetrator of the assault under Title VII alleging, *inter alia*, sexual harassment in the form of a hostile work environment; under 42 U.S.C. § 1981 for race discrimination; and under various state law theories predicated on the same purported misconduct. Dismissal of the Plaintiff's claims is proper under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Specifically, the Plaintiff's Complaint suffers from a lack of sufficient facts to advance his claims from the realm of mere "possibility" to "probability," as required at the pleading stage pursuant to the well settled standard set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-559 (2007).

Should the court disagree that the matter is ripe for dismissal under Rule 12, the Defendants move in the alternative under Federal Rule of Civil Procedure 56. Under no circumstances on the indisputable, competent facts in the record can the Plaintiff's claims survive Rule 56 scrutiny.

Critically, video surveillance of the alleged "assault" at issue forecloses any entitlement to relief by the Plaintiff in this case. *See*, *e.g.*, *Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding that video footage that conclusively undermines a plaintiff's self-serving accusations sustains entry of judgment under Rule 56); *accord Statchen v. Palmer*, 623 F.3d 15, 18 (1st Cir. 2010) (emphasizing that "incredible assertions" by the nonmoving party "need not be accepted" under the Rule 56 rubric). While the Plaintiff dresses up a split-second touch on the shoulder by a co-worker as an instance of assault, a factfinder could never reasonably infer that a fleeting tap on the shoulder to get a co-worker's attention constitutes sexual harassment or any other legal claim. As a matter of law, it plainly does not.

For these reasons, and those set forth in greater detail below, the Plaintiff's Complaint must be dismissed with prejudice or judgment entered in the Defendants' favor on all counts against them.

## I. Facts and Procedural Posture

The facts set forth in the Plaintiff's Complaint are fatally thin. However, the Plaintiff also attaches to his Complaint the administrative Charge of Discrimination that he filed with the Equal Employment Opportunity Commission ("EEOC") and a police report narrative, both of which contain his own statements and are, as a matter of well settled law, incorporated into his Complaint. *See*, *e.g.*, *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008) (explaining that, on a motion to dismiss, a court can consider documents attached to the complaint as well as the complaint itself). Notably, in instances where the allegations in the Complaint and those in any records appended thereto contradict one another, as is the case here, the latter trumps the former. *See*, *e.g.*, *Hampshire House Corp. v. Fireman's Fund Ins. Co.*, Civil Action 20-11409-FDS, at *17 n.12 (D. Mass. Aug. 26, 2021) (holding that, although uncommon, a plaintiff "may

plead [himself] out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment.") (citations omitted); *Barricello v. Wells Fargo Bank, N.A.*, 2016 WL 1244993, at *10 (D. Mass. Mar. 22, 2016) ("When a document attached to a complaint contradicts an allegation in the complaint, the document trumps the allegation."). With this framework in mind, the Plaintiff's admissions in the records appended to the Complaint, coupled with the barebones recitation of facts in the pleading itself, are both straightforward and instructive for purposes of evaluating the sufficiency of the Complaint under Rule 12(b)(6).

The Plaintiff alleges that in April 2024, while employed by Defendant Massachusetts Convention Center Authority ("MCCA"), Defendant Arthur Fritch III[1] thrice directed "verbal foul language" towards him. (Compl. ¶ 2a). Specifically, the Plaintiff claims that Fritch referred to the Plaintiff as an "asshole." (Compl. ¶ 2c). The Plaintiff alleges that Fritch then followed him, ultimately touching Plaintiff from behind. (Compl. ¶ 2b). The Plaintiff explains that he was "pushed" and "stopped with unlawful restraint of [his] will." *Id.* This is the extent of the factual support presented in the Complaint on the issue of purported sexual harassment.

Plaintiff's EEOC Charge and the police narrative he appended to his pleading help fill in the gaps. In his Charge, Plaintiff surmises that he was "sexually harassed" because Defendant Fritch "touched his shoulder." (ECF No. 1-2 at p. 3) ("I believe I was sexually harassed … because he touched my shoulder."). Plaintiff also alleges that Fritch called him an "asshole." *Id.* Regarding the alleged assault, Plaintiff explains: "He did not know what I look[ed] like when he said it ["asshole"], after realizing I was next to him, he followed me, touch[ed] my shoulder, and trie[d] to apologize." *Id.* Finally, Plaintiff admits that he did not encounter Fritch again after that isolated

[1] Defendant Fritch has not yet been served with the Complaint, expressly does <u>not</u> waive the service requirement, and reserves his right to challenge the sufficiency of service if it is effectuated. For ease of the court, he otherwise joins this motion for dismissal.

incident. *Id.* ("We didn't see each other after that encounter.").

When reporting the incident to the police, Plaintiff recounted as follows:

> The victim stated the suspect kept saying where is that asshole John Paquin. The victim stated that [as] he turned around showing the suspect his work ID[,] the victim told the suspect he was John and the victim continued to walk down the hall. The victim stated the suspect kept saying the victim's name down the hall and following him. The victim stated the suspect approached the victim and put his hand on the victim's shoulder to stop him and turned him around.

(ECF No. 1-2 at p. 1). It is here that the Plaintiff also references that the incident was captured on surveillance video. *Id.* The video is attached as Exhibit 1.[2] In the video, Defendant Fritch unremarkably places his hand on the Plaintiff's shoulder to grab his attention for a mere second. (Ex. 1 at 0:00:15). Understandably, neither the EEOC nor the police pursued the matter.

In the Complaint, Plaintiff further alleges that he was subjected to a hostile work environment "created by negligent personnel procedures [sic] by the Board of Directors and Executive Director" but provides no factual support for this conclusory statement. (Compl. ¶ 1). He admits that, following a complaint to human resources, Defendant Fritch was asked to leave the premises. (Compl. ¶ 2d). In fact, he concedes that he did not encounter Fritch again after the incident. (ECF No. 1-2 at p. 3). Nonetheless, the Plaintiff asserts that he was "forced to quit [his] employment." (Compl. ¶ 2d).

Finally, the Plaintiff alleges that the MCCA "failed to take appropriate action to prevent or correct this hostile work environment despite multiple complaints from former employees about misconduct" including "multiple reports by Plaintiff (graffiti, damage to building) and other employees throughout the past year..." (Compl. ¶ 3). The Plaintiff's complaints about supposed graffiti and damage to the building bear absolutely no relation to the incident of alleged sexual harassment (the latter of which the Plaintiff admits was isolated in nature and involved a co-worker

[2] The video is authenticated by MCCA's Chief Information Security Officer via the affidavit attached as Exhibit 2.

who did not even know who he was). (*See* ECF No. 1-2 at p. 3).

From these allegations, the Plaintiff alleges discrimination and a hostile work environment based on his membership in several protected classes, including "gender, race, and disability under Title VII and other applicable state and federal laws." (Compl. ¶ 5). He also cites to 42 U.S.C. § 1981. (Compl. ¶ 7). While Plaintiff does not identify his race in the Complaint, he explains in his Charge that he believes he was called an "asshole" by Defendant Fritch due to his "national origin, Italian, because Author Fritz [sic] III is Irish." (ECF No. 1-2 at p. 3). Plaintiff also claims that he was "subjected to discrimination because of [his] religious beliefs which stem from Catholicism, Judaism, Islam, Buddhism, and Rastafarian." *Id.* He provides absolutely no factual support for this statement. As to his supposed disabilities ("anxiety and depression"), the Plaintiff accepts that the Defendants neither perceived him as disabled, nor does he allege that he disclosed these disabilities to his employer. (Compl. ¶ 5). Finally, the Plaintiff also references "defamation" but does not provide a factual basis for this claim outside of the "asshole" remark supposedly made by Fritch. (Compl. ¶¶ 2, 3).

## II. Standard of Review

### A. Facts from Documents Outside of the Pleadings/Video

While it is true that, ordinarily, a court will not consider documents outside of the pleadings on a motion to dismiss, the First Circuit has carved out an exception "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiff's claim; or for documents sufficiently referred to in the complaint." *Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993); *Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 15 (1st Cir. 2009). Critically, it is well settled that documents that are appended to the Complaint are fair game; however, even when a plaintiff neglects to attach a record that is otherwise readily

incorporated into the Complaint by reference, the opposing party "may introduce the exhibit as part of his motion attacking the pleading." *Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1015 (1st Cir. 1988). Here, the surveillance video is referred to in the Plaintiff's pleading. *See* ECF No. 1-2 at p. 1. Accordingly, the court can consider it when evaluating the sufficiency of the Complaint under Rule 12(b)(6), and should also discredit any allegations that are inconsistent with matters that the Plaintiff voluntarily appended to his pleading. *See Trans-Spec Truck Serv., Inc.*, *supra*, 524 F.3d at 321 (court can consider documents attached to the complaint as well as the complaint itself); *Hampshire House Corp.*, *supra*, at *17 n.12 (plaintiff "may plead [himself] out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment."); *Barricello*, *supra*, at *10 ("When a document attached to a complaint contradicts an allegation in the complaint, the document trumps the allegation.").

**B. Rule 12(b)(6)**

Because the application of Fed.R.Civ.P. 12(b)(6) is a procedural question, the law of the First Circuit governs the analysis. *See Polymer Indus. Prods. Co. v. Bridgestone/Firestone, Inc.*, 347 F.3d 935, 937 (Fed. Cir. 2003). When considering a motion to dismiss for failure to state a claim upon which relief can be granted, the court must "take all factual allegations as true and … draw all *reasonable* inferences in favor of the plaintiff." *Rodriguez-Ortiz v. Margo Caribe, Inc.*, 490 F.3d 92, 96 (1st Cir. 2007); *Maldonado v. Fontanes*, 568 F.3d 263, 266 (1st Cir. 2009). However, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief" and dismissal is appropriate. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), quoting *Bell Atl.*, 550 U.S. at 557.

While the pleading standard does not call for "detailed factual allegations," it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do." *Bell Atl.*, 550 U.S. at 555. The court should disregard "bald assertions, unsupportable conclusions, and opprobrious epithets." *In re Citigroup, Inc.*, 535 F.3d 45, 52 (1st Cir. 2008). In sum, to survive a motion to dismiss "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is *plausible* on its face." *Mass. Inst. of Tech. v. Shire PLC*, 1:13-CV-10020-MLW, at *15-17 (D. Mass. Feb. 2, 2014).

**C. Rule 56**

As several cases spell out the summary judgment standard in "splendid detail," *Medina-Rivera v. MVM, Inc.*, 713 F.3d 132, 136 (1st Cir. 2013), citing *Rockwood v. SKF USA Inc.,*687 F.3d 1, 9 (1st Cir.2012), and this court is undoubtedly familiar with it, we share only the highlights here. The court must draw reasonable inferences in the Plaintiff's favor. *See, e.g., Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield of R.I.,*373 F.3d 57, 61 (1st Cir. 2004); *Casas Office Machs., Inc. v. Mita Copystar Am., Inc.,*42 F.3d 668, 684 (1st Cir. 1994). But the Plaintiff cannot rely on mere speculation and conjecture alone to avoid summary judgment. *Medina–Munoz,* 896 F.2d at 8.

More importantly, as is decidedly true here, the court need not accept the Plaintiff's version of events if it is "blatantly contradicted" by the evidence. *See Scott,* 550 U.S. at 380. Where evidence of the event in question, such as the surveillance video in this case, reveals "that there is no genuine dispute as to any material fact" and that the Defendants are "entitled to judgment as a matter of law," *see* Fed.R.Civ.P. 56(a),(c) – "which is a fancy way of saying that no reasonable jury could find for [plaintiff]," judgment must enter for the moving party. *Medina-Rivera*, 713 F.3d at 136, citing *Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777, 784 (1st Cir. 2011).

## III. Argument

### A. Title VII

Plaintiff alleges that thrice being referred to as an "asshole" by Defendant Fritch, and Fritch then touching him on the shoulder when attempting to apologize, constitutes discrimination, sexual harassment, and supports a claim for hostile work environment resulting in a constructive discharge. Plaintiff has dispositively failed to state a colorable claim in this regard.

First, the Plaintiff must allege sufficient facts to support a discrimination and/or hostile work environment claim *that is predicated on his membership in a protected class*. In doing so, "[i]n order to state a claim for employment discrimination under those statutes, the plaintiff must sufficiently allege that he suffered an adverse employment action because of the plaintiff's protected characteristic (such as race or sex) and some adverse employment action was taken against the plaintiff." *See Alicea v. North Am. Central School Bus, LLC*, 232 F.Supp.3d 213, 215 (D. Mass. 2017). "It is not sufficient to allege that the plaintiff is a member of a protected class and suffered an adverse employment action; he must allege facts indicating a relationship between the plaintiff's protected characteristic and the adverse employment action." *Ayele v. Sec. Servs. of Conn.*, Civil Action 22-11798-NMG, at *12 (D. Mass. Apr. 18, 2022), citing *Alicea*, *supra*. "Put simply, the complaint has to allege a plausible basis for a claim of *discrimination*, not just unfair treatment." *Id.*, quoting *Alicea*, *supra* (emphasis in original).

Plaintiff fails to identify the nature of his membership in any protected class except for disability. Regardless, there are absolutely no facts to support that a legally cognizable adverse action was taken against him as a result of any protected characteristics. For this reason, his discrimination and hostile work environment claims must be dismissed.

a. Sexual Harassment/Hostile Work Environment

The crux of Plaintiff's Complaint involves the shoulder touch by Defendant Fritch and being referred to as an "asshole." The Plaintiff claims that this amounts to a sexually harassing hostile work environment. The law does not support this conclusion.

A hostile work environment claim under Title VII has several elements, and requires a plaintiff to plead sufficient facts to support each, including: (1) membership in a protected class, (2) that he was subjected to unwelcome harassment, (3) that the harassment was based upon his membership in a protected class, (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of his employment and create an abusive work environment, (5) that the conduct at issue was both objectively and subjectively offensive, and (6) a basis for employer liability. *Douglas v. J.C. Penney Co.*, 474 F.3d 10, 15 (1st Cir. 2007). *See also Cabi v. Bos. Children's Hosp.*, 161 F. Supp. 3d 136, 152 (D. Mass. 2016). There is nothing in the instant Complaint that could plausibly meet these elements.

First, like a discrimination claim, a hostile work environment must be related to the Plaintiff's membership in a protected class. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). *See also Burns v. Potter*, 334 F. Supp. 2d 13, 19-20 (D. Mass. 2004); *Cabi*, *supra*, 161 F. Supp. 3d at 152-53. For the same reasons his discrimination claims fail on the pleadings, so too does his suggestion of a sexually harassing hostile work environment, as there are no facts to support that Defendant Fritch referring to the Plaintiff as an "asshole," and then tapping him on the shoulder to apologize, had anything to do with his gender or was somehow sexual in nature. The facts alleged simply do not support prong 3 of the analysis. Meanwhile, the surveillance video eviscerates any chance of the Plaintiff proving this element.

On prong 4, evaluating whether the harassment was sufficiently pervasive and severe, "Title VII does not prohibit all verbal or physical harassment in the workplace" and is not a "general civility code." *Oncale*, *supra*, 523 U.S. at 80-81. To succeed on a hostile work environment claim, a plaintiff must plead sufficient facts to show that their "workplace [was] permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of … employment and create an abusive working environment." *Quiles-Quiles v. Henderson*, 439 F.3d 1, 7 (1st Cir. 2006) (quotations omitted); *Ríos-Jiménez v. Principi*, 520 F.3d 31, 43 (1st Cir. 2008). Among the factors relevant to this inquiry are "the severity of the conduct, its frequency, and whether it unreasonably interfered with the victim's work performance." *Id.*

The facts alleged in the Complaint fall well short of this threshold. Similarly, the video undermines any inference that the touching at issue was pervasive, severe, or even objectively offensive. Critically, "offhand comments" uttered a couple of times are, as a matter of law, not "sufficiently severe or pervasive to alter the conditions of … employment" or "create an abusive working environment." *Ríos-Jiménez v. Principi*, 520 F.3d at 43, citing *Quiles-Quiles*, 439 F.3d at 7. The isolated nature of this incident also promotes dismissal. Specifically, the First Circuit has reiterated time and time again that stray remarks are generally insufficient to establish either pretext or the discriminatory animus required to sustain a hostile work environment claim. *See, e.g.*, *Thompson v. Coca-Cola Co.*, 522 F.3d 168, 178 (1st Cir. 2008), citing *Straughn v. Delta Air Lines, Inc.*, 250 F.3d 23, 36 (1st Cir. 2001); *Gonzalez v. El Dia, Inc.*, 304 F.3d 63, 69 (1st Cir. 2002).

Finally, an employer's liability for a hostile work environment claim depends on the alleged harasser's employment status relative to the Plaintiff. An employer can only be held liable

if it knew or should have known about the supposed harassment by a co-worker and failed to take prompt and effective remedial action in response. *White v. N.H. Dept. of Corr.*, 221 F.3d 254, 261 (1st Cir. 2000) (Title VII requires proving that one or more supervisors "knew or should have known" of the workplace harassment but "failed to implement prompt and appropriate corrective action."); *Franchina v. City of Providence*, 881 F.3d 32, 51 (1st Cir. 2018). The fact that Defendant Fritch allegedly referred to the Plaintiff as an "asshole," and then touched him on the shoulder while trying to apologize, cannot form the basis of liability against the MCCA. The Plaintiff admits that it was an isolated incident; that Fritch did not even know who he was when he made the remarks; that the Plaintiff reported the misconduct and Defendant Fritch was sent home in response; and that the Plaintiff "quit" nonetheless. These facts fall far short of establishing employer liability. Notably, Plaintiff's general and conclusory allegations of negligence about prior unrelated reports of graffiti and building damage do not save his claim.

      b. <u>Constructive Discharge</u>

On his claim of constructive discharge, the Plaintiff fares no better. To properly allege a constructive discharge, the Plaintiff must present sufficient facts to support "working conditions so intolerable, that a reasonable person would feel compelled to forsake his job rather than to submit to looming indignities." *See Calhoun v. Acme Cleveland Corp.,* 798 F.2d 559, 561 (1st Cir. 1986). *See also Vega v. Kodak Caribbean, Ltd.*, 3 F.3d 476, 480 (1st Cir. 1993). Plaintiff's Complaint is lacking sufficient facts to meet this burden.

**B.  42. U.S.C. Section 1981**

The Plaintiff references 42. U.S.C. Section 1981 in the Complaint, but it is unclear for what purpose. Section 1981 affords relief when "racial discrimination precludes a plaintiff from entering a contractual relationship or when racial discrimination impairs a plaintiff's existing

contractual relationship." *Alston v. Spiegel*, 988 F.3d 564, 572 (1st Cir. 2021), citing *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). "To state a claim under Section 1981, a plaintiff must show that he is a member of a racial minority, that the defendant discriminated against him on the basis of his race, and that the discrimination implicated the right to make and enforce contracts." *Id.*, citing *Hammond v. Kmart Corp.*, 733 F.3d 360, 362 (1st Cir. 2013).

Plaintiff fails to adequately plead every element of his Section 1981 claim. He does not identify his status as a racial minority, he neglects to include any facts to support that race factored into any discriminatory conduct, and there is nothing to sustain a claim that his right to make or enforce contracts was impeded by discrimination.

**C. Negligence**

Plaintiff makes several references to negligence in his Complaint but has not sufficiently pled a viable negligence claim against the MCCA or Defendant Fritch. In a negligence action, the Plaintiff "has the burden of proving each and every element of that claim: duty, breach of duty (or, the element of negligence), causation (actual and proximate), and damages." *Ulwick v. DeChristopher,* 582 N.E.2d 954, 958 (Mass. 1991). There are no facts to support that the MCCA or Defendant Fritch owed a duty to the Plaintiff or, more importantly, that any of their acts or omissions fell below the standard of care and caused the Plaintiff any legally cognizable harm. Plaintiff alleges that he reported the touching of his shoulder by Defendant Fritch and that the latter was sent home. The Plaintiff then voluntarily severed his employment. This does not constitute negligence as a matter of law.

Nonetheless, the Plaintiff alleges that the acts of the MCCA and Fritch were *intentional*, which forecloses negligence as a viable theory of relief absent factual support on the elements of a negligence claim. (Compl. ¶ 1) (Plaintiff "brings this action against Defendant and Individual

Defendant for their willful and intentional acts…"). Any claim sounding in negligence must be dismissed.

**D. Intentional Torts**

The only factual allegations in the Complaint citing alleged intentional misconduct relate to Defendant Fritch. As such, even though not directly or adequately pled, we address these theories in turn.

a. Defamation

Plaintiff alleges that Defendant Fritch calling him an "asshole" constitutes defamation. As a matter of law, it does not. Notably, dismissals and summary judgments are favored in defamation suits. *Alba v. Sampson*, 44 Mass. App. Ct. 311, 312 (Mass. App. Ct. 1998), citing *Mulgrew* v. *Taunton*, 410 Mass. 631, 632 (1991). This is undoubtedly one of those cases.

As a threshold matter, "[g]enerally, spoken words are not actionable per se without proof of special damages, which consist of economic, as distinguished from general, damages." *Id.*, citing *Lynch* v. *Lyons*, 303 Mass. 116, 118-119 (1939). Here, the Plaintiff has not pled any facts tending to show special damages and, as such, has no reasonable expectation of proving an essential element of his case. Notwithstanding this fatal flaw, Plaintiff's defamation claim fails for several other reasons.

"Defamation is the publication of material by one without a privilege to do so which ridicules or treats the plaintiff with contempt." *Correllas v. Viveiros*, 410 Mass. 314, 319 (1991). In order to plead defamation, a plaintiff must present sufficient facts to support "(1) a false and defamatory communication (2) of and concerning the plaintiff which is (3) published or shown to a third party." *Dorn v. Astra USA*, 975 F. Supp. 388, 396 (D. Mass. 1997). Accordingly, "a threshold issue is whether the statement is reasonably susceptible of a defamatory meaning, and

that determination is a question of law for the court." *Foley v. Lowell Sun Publ'g Co.*, 404 Mass. 9, 11 (1989).

Referring to someone as an "asshole," while impolite, does not rise to the level of defamation. Words of general disparagement "equally discreditable as applied to all persons," including profanity-laced statements, are simply not defamatory. *See Alba*, *supra*, 44 Mass. App. Ct. at 313 (holding that the defendant calling the plaintiff a "[expletive] asshole" and falsely accusing the plaintiff of having referred to him as "a fat loser" did not rise to the level of defamation). While this ends the inquiry, Plaintiff also fails to plead that the statement was published to a third-party (in fact, the allegations suggest that Defendant Fritch's statement was made directly to the Plaintiff and to him alone). Further, it is well settled law that statements of opinion cannot form the basis of liability under a theory of defamation. *See*, *e.g.*, *King v. Globe Newspaper Co.*, 400 Mass. 705, 709 (1987). Again, while unmannerly, Defendant Fritch's opinion of the Plaintiff cannot be defamatory as a matter of law. *Id.*

For these reasons, any claim for defamation must be dismissed.

b. Assault & Battery ("A&B")

Plaintiff alleges that Defendant Fritch tapping him on the shoulder constitutes an assault and battery. His allegations in this regard are entirely conclusory and lack factual muster. A person is liable for "assault" if he intentionally puts another in imminent apprehension of harmful or offensive physical contact. *See* Restatement (Second) of Torts § 21 (1965). A person is liable for "battery" when he intentionally causes harmful or offensive physical contact with another person. *See id.* § 13 (1965). There are insufficient factual allegations to support that Defendant Fritch engaged in either form of intentional misconduct. *See Latham v. Kennedy*, Civil Action 23-10121-RGS, at *3 (D. Mass. Apr. 7, 2023) (dismissal of assault and battery count for failure to

state a claim warranted where allegations are conclusory). In fact, Plaintiff admits that Fritch's intention was to apologize for unknowingly referring to him as an "asshole."

Notwithstanding this deficiency, the video surveillance clearly shows Defendant Fritch benignly place his hand on the Plaintiff's shoulder for a second. Fritch does this while the Plaintiff is facing away from him in a manner that precludes a factfinder from concluding that the contact was objectively harmful or offensive, or that the Plaintiff was in imminent apprehension of harmful contact. Fritch then removes his hand immediately. Under no circumstances can the interaction depicted in the surveillance video constitute an assault or battery. For this reason, dismissal is warranted on the Plaintiff's A&B claim.

c. Intentional Infliction of Emotional Distress ("IIED")

Plaintiff alleges that his momentary interaction with Defendant Fritch caused him severe emotional distress. Under this theory of relief, the conduct at issue must be so "extreme and outrageous" that it extends "beyond all possible bounds of decency" and is "utterly intolerable in a civilized community." *Finucane v. Town of Belchertown*, 808 F. Supp. 906, 911 (D. Mass. 1992), citing *Agis v. Howard Johnson Company*, 371 Mass. 140, 145 (1976). In fact, the conduct at issue must be so incredibly abhorrent that "no reasonable man could be expected to endure it." *Id.* Critically, liability cannot be based on "mere insults, indignities, threats, annoyances, petty oppression, or other trivialities…" *Foley v. Polaroid Corp.,*400 Mass. 82, 99 (1987). Plaintiff's suggestion that Defendant Fritch's conduct meets the threshold outlined above contradicts well settled precedent. Accordingly, this claim is ripe for dismissal.

Notwithstanding the inadequacies of Plaintiff's pleading, Plaintiff's claim for IIED fails because the Massachusetts Workers' Compensation Act provides the exclusive remedy for certain work-related injuries – including IIED claims – unless the employee submits a written reservation

of rights when he or she begins employment. M.G.L. c. 152, § 24. As a result, common law claims are barred where "the plaintiff is shown to be an employee; his condition is shown to be a personal injury within the meaning of the compensation act; and the injury is shown to have risen out of and in the course of employment." *Foley v. Polaroid Corp.*, 413 N.E.2d 711, 713-14 (Mass. 1980). Courts routinely reject IIED claims arising in the workplace because of the workers' compensation exclusivity provision. *Green v. Wyman-Gordon Co.*, 422 Mass. 551, 558 (1996) ("It makes no difference that the emotional distress results from a fellow employee since the injury is still compensable under the workers' compensation act."); *Kelly v. Raytheon, Inc.*, 29 Mass. App. Ct. 1000, 1001 (Mass. App. Ct. 1990); *Pierre v. U.S. Sec. Assocs., Inc.*, No. 14-13382-GAO, at *5 (D. Mass. Jan. 30, 2015). Plaintiff did not submit a written reservation of rights at the outset of employment. Thus, his IIED claim fails.

## IV. Conclusion

For the reasons articulated herein, Plaintiff's Complaint must be dismissed in its entirety.

**ARTHUR FRITCH III & MASSACHUSETTS CONVENTION CENTER AUTHORITY**

By their attorneys,

/s/ Michael Stefanilo Jr.

Michael Stefanilo Jr., Bar No. 684500
Francis J. Bingham, Bar No. 682502
Bianca M. Young, Bar No. 706016
LITTLER MENDELSON, P.C.
One International Place
Suite 1300
Boston, MA 02110
Telephone: 617.378.6000
Facsimile: 617.737.0052
mstefanilo@littler.com
fbingham@littler.com
bmyoung@littler.com

Dated: June 13, 2024

**CERTIFICATE OF SERVICE**

I, Michael Stefanilo Jr., hereby certify that, on this 13th day of June, 2024, the foregoing document was filed electronically through the ECF system, is available for viewing and downloading from the ECF system, and will be sent electronically to counsel of record as registered participants identified on the Notice of Electronic Filing and via email and first class mail to pro se plaintiff as follows:

John Paquin (pro se)
jpaq513@gmail.com
122 Black Arrow Way #423
Becket, MA 01223

*/s/ Michael Stefanilo Jr.*
Michael Stefanilo Jr.

4864-7706-6179.1 / 123135-1007